1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12

AZIA B.,[1]

               Plaintiff,

     v.

KILOLO KIJAKAZI,

              Defendant.

Case No.  22-cv-01731-TSH

**ORDER RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 17, 22

## I.  INTRODUCTION

Plaintiff Azia B. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 17.  Defendant cross-moves to affirm.  ECF No. 22.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.[2]

## II.  PROCEDURAL HISTORY

On October 17, 2019, Plaintiff filed an application for Social Security Disability Insurance benefits with a disability onset date of February 7, 2019.  AR 52, 198.  The application was initially denied on February 10, 2020 and again on reconsideration on May 12, 2020.  AR 81, 95.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 4, 10.

United States District Court
Northern District of California

1    An Administrative Law Judge ("ALJ") held a hearing on May 25, 2021 and issued an unfavorable

2    decision on June 4, 2021.  AR 12-51.  The Appeals Council denied Plaintiff's request for review

3    on March 1, 2022.  AR 1-6.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

5         Plaintiff raises two issues on appeal: (1) the ALJ erred in discrediting her testimony

6    regarding her symptoms and limitations; and (2) the ALJ erred in considering the medical opinion

7    evidence.

### IV.   STANDARD OF REVIEW

9         42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision

10   to deny disability benefits, but "a federal court's review of Social Security determinations is quite

11   limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability

12   determination should be upheld unless it contains legal error or is not supported by substantial

13   evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).  Under this

14   standard, the Court looks to the existing administrative record and asks "whether it contains

15   'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, ___

16   U.S. ___, 139 S. Ct. 1148, 1154 (2019) (simplified).  Substantial means "more than a mere

17   scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to

18   support a conclusion." *Id.* (simplified).

19        The Court "must consider the entire record as a whole, weighing both the evidence that

20   supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

21   simply by isolating a specific quantum of supporting evidence." *Garrison*, 759 F.3d at 1009

22   (citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in

23   medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted).  If "the evidence

24   can reasonably support either affirming or reversing a decision," the Court may not substitute its

25   own judgment for that of the ALJ." *Id.* (citation omitted).

26        Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

27   harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012).  "[A]n error is harmless

28   so long as there remains substantial evidence supporting the ALJ's decision and the error does not

United States District Court
Northern District of California

2

negate the validity of the ALJ's ultimate conclusion." *Id.* (simplified).  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492.  The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a "five-step sequential evaluation process."  20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same standard for supplemental security income).  This process ends when the ALJ can make a finding that the claimant is or is not disabled.  *Id.* § 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities."  *Ford*, 950 F.3d at 1148 (simplified).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since February 7, 2019, the alleged onset date.  AR 17.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: affective disorder, post-traumatic stress disorder, obsessive-compulsive disorder, anorexia nervosa, borderline personality disorder, and history of substance abuse. AR 17.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 17.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined Plaintiff has the RFC to

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: she could perform only routine, repetitive tasks involving no more than occasional use of judgment,

4

> decision making, and workplace changes; she could tolerate only occasional interaction with the public, coworkers, and supervisors; and, she could maintain concentration, persistence, and pace for extended periods on simple job tasks, but not complex job tasks.

AR 19.  Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.  AR 24.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4]  *Id.*  Here, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR 25.  Accordingly, the ALJ determined Plaintiff is not disabled.  *Id.*

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant."  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*  "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

United States District Court
Northern District of California

**B.      Plaintiff's Credibility**

**1.      Legal Standard**

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  And second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (simplified).

"At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at 1112 (citation and internal quotations omitted).  Along the same lines, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."  SSR 16-3P, 2016 WL 1119029, at *2. In determining whether an individual's symptoms will reduce her capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Molina*, 674 F.3d at 1112 (citations and internal quotation marks omitted).  "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner."

1   SSR 16-3p, 2016 WL 1119029, at *7.

2          **2.      Analysis**

3          Plaintiff was at a concert in Las Vegas in 2017 where there was a mass shooting event.

4   AR 43.  She initially went back to work, but she had difficulty working because of night terrors

5   and severe anxiety.  AR 44.  Before the shooting, Plaintiff testified she already had diagnoses of

6   bipolar disorder, depression, anxiety, obsessive compulsive disorder and anorexia nervosa.  AR

7   44-45.  After the shooting, she was diagnosed with post-traumatic stress disorder and borderline

8   personality disorder.  AR 45.  She last worked in February 2019 as a co-manager in a retail shop.

9   AR 35-36.

10          In his decision, the ALJ found Plaintiff's impairments were not sufficient to support a

11   finding of disability.  AR 24.  The ALJ acknowledged Plaintiff "made persistent complaints of low

12   mood, low energy, poor sleep, panic, anxiety, flashbacks, diminished concentration, and deficits in

13   short-term memory."  *Id.*  The ALJ also noted that "treating sources acknowledged these

14   complaints and attempted to address same through medication management and various

15   therapies."  *Id.*  However, the ALJ found that "objective findings regularly included that the

16   claimant was pleasant and cooperative, with normal behavior, normal speech, logical thought

17   process, goal-directed thought content, full orientation, normal attention, normal concentration,

18   intact memory, normal fund of knowledge, fair to good impulse control, fair to good insight, and

19   fair to good judgment," and that "[t]he frequency of these findings throughout the treatment record

20   is not indicative of totally debilitating functional impairment."  *Id.*

21          Plaintiff argues the ALJ isolated only parts of the mental status examinations as evidence

22   that her symptoms were not as severe as alleged.  Pl.'s Mot. at 4.  She contends the ALJ materially

23   misstated the record, which, taken as a whole, demonstrates she "suffered from more than

24   moderate symptoms of her many conditions and would experience debilitating fatigue, and an

25   inability to handle the additional stress of a workplace."  *Id.* at 4, 6.

26          As a preliminary matter, "it is the ALJ's prerogative" to assess whether and to what extent

27   the claimant's statements about symptoms are consistent with the record as a whole, and in this

28   regard, the role of "a reviewing court is limited."  *Molina*, 674 F.3d at 1120-21.  An ALJ must

United States District Court
Northern District of California

7

make specific findings about a claimant's symptom allegations, properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" a claimant's subjective testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). Here, the ALJ admitted Plaintiff's complaints were consistent throughout the record, her doctors acknowledged these same symptoms, and they attempted to treat them with various medications and therapies. AR 24. Based on this record, Plaintiff's complaints of limitations that significantly limit the ability to perform work activities were entitled to at least some weight as symptoms of her severe medically determinable impairments. However, the Court finds the ALJ properly discounted Plaintiff's assertions that her impairments were so severe and disabling as to preclude all employment.

Per the regulations, the ALJ's primary consideration was how consistent Plaintiff's statements about symptoms were with the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2) ("evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques"). This could not be the ALJ's sole reason for rejecting Plaintiff's statements about excess symptoms, but it was a primary factor that he was required to consider. 20 C.F.R. § 404.1529(c)(2); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while claimant's statements about symptoms including disabling pain "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor"). The ALJ found the clinical findings in the record did not support Plaintiff's allegations of total disability and instead supported non-exertional limitations that were not work preclusive. AR 19-24.

For example, the ALJ noted that mental status examinations repeatedly showed Plaintiff was pleasant and cooperative, with normal behavior, normal speech, logical thought process, goal-directed thought content, full orientation, normal attention, normal concentration, intact memory, normal fund of knowledge, fair to good impulse control, fair to good insight, and fair to good judgment. *See* AR 20-24 (citing AR 320, 326, 332-33, 344-45, 351, 378-79, 401, 417-18, 420, 778, 897-98, 915-16, 923-24, 935-36, 949, 976, 1013, 1082-83, 1119, 1126-27, 1171, 1187, 1197,

1211, 1234, 1240).  As the ALJ noted, the frequency of these findings throughout the treatment

record does not indicate a totally debilitating functional impairment.  AR 24.  The ALJ also found

the consultative examination and assessment of Jacklyn Chandler, Ph.D. persuasive in that Dr.

Chandler assessed only non-exertional limitations.  AR 23, 759-63; *see Batson v. Comm'r of Soc.

Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ properly relied on objective findings and

physician's opinion to discredit claimant's testimony regarding functional limitations); *Reyes v.*

*Berryhill*, 716 Fed. App'x 714, 714 (9th Cir. 2018) (ALJ properly concluded plaintiff's testimony

was not corroborated by normal medical findings).

    After considering consistency with the objective medical evidence, the ALJ considers

whether and to what extent the claimant's subjective statements are consistent with "other

evidence" in the record.  20 C.F.R. § 404.1529(c)(3).  This other evidence may include the

claimant's daily activities, medications, and any "other factors" that the ALJ deems relevant.  20

C.F.R. § 404.1529(c)(3)(i)-(vii).  The ALJ need not consider any specific "other evidence."  The

ALJ considers only those factors that are relevant.  SSR 16-3p.  Here, the ALJ found Plaintiff's

statements of disabling symptoms inconsistent with evidence that treatment measures improved

her condition and symptoms.  AR 21-22; *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi) (when evaluating

a claimant's symptoms, the agency will consider the "type, dosage, effectiveness, and side effects

of any medication you take or have taken to alleviate your pain or other symptoms," and any other

treatment or measures used to alleviate pain or other symptoms); *see also Warre v. Comm'r of*

*Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be treated effectively

with treatment are not disabling for purposes of determining Social Security disability eligibility).

As the ALJ noted, treating sources addressed Plaintiff's mental impairment symptoms through

medication and various therapies.  AR 20-24.  The ALJ highlighted that Plaintiff continued to

participate in individual therapy and group therapy for her mental health and former substance

abuse.  AR 22.  Plaintiff also reported that her anxiety was high but she was feeling better, and the

only medication side effect she reported was tiredness for about an hour after waking in the

morning.  AR 21, 348.  The ALJ noted that Plaintiff's medication regimen was adjusted as

necessary to best treat her impairments and symptoms, that her psychiatric symptoms appeared to

United States District Court
Northern District of California

1    be controlled by medication, and that her condition did not require a higher level of care.  AR 20-

2    22 (citing 321, 327, 379, 402, 418, 421, 540, 762, 779, 890-1244).

3         In sum, substantial evidence supported the ALJ's finding that Plaintiff's testimony was

4    inconsistent with the objective and other evidence of record.  Plaintiff's disagreement with the

5    ALJ's fact-finding is not a basis for reversal, as the Court need only find a modicum of

6    evidence—more than a scintilla but less than a preponderance—to support the ALJ's findings in a

7    review for substantial evidence.  *Biestek*, 139 S. Ct. at 1157.  Moreover, the Court must affirm

8    even if the record "is susceptible to more than one rational interpretation."  *Shaibi*, 883 F.3d at

9    1108.  The ALJ provided specific, clear and convincing reasons for finding that Plaintiff's

10   subjective statements about the severity of her symptoms were not entirely consistent with medical

11   evidence and other evidence in the record.  As such, the decision must be affirmed.

12   **C.     Medical Opinions**

13        Plaintiff argues (1) the ALJ improperly discredited the opinion of her treating psychiatrist,

14   Danie Saal, M.D., and (2) failed to address the support or consistency of the medical consultants'

15   opinions as required under the regulations.

16        **1.     Legal Standard**

17        For Social Security claims filed after March 27, 2017, the ALJ is required to assess the

18   persuasiveness of the medical opinion using the regulations outlined in 20 C.F.R. §§ 404.1520c

19   and 416.920c.  *See Woods v. Kijakazi*, 32 F.4th 785, 791-93 (9th Cir. 2022) (embracing the

20   Commissioner's new regulatory framework for evaluating medical opinions).  Under these new

21   regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3)

22   relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a

23   medical source's familiarity with the other evidence in the claim or an understanding of the

24   disability program's policies and evidentiary requirements.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5),

25   416.920c(c)(1)-(5).  Of these five, the ALJ must address supportability and consistency in each

26   assessment and may, but is not required to, explain how they considered the remaining three

27   factors.  *See* 20 C.F.R. §§ 404.1520c(a)(2), 416.920c(a)(2).

28        "Supportability means the extent to which a medical source supports the medical opinion

United States District Court
Northern District of California

10

by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be"). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

The new regulations eschew the former hierarchy of medical opinions and no longer require the ALJ to afford greater weight to the opinions of treating physicians. *See Woods*, 32 F.4th at 787; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). Instead, an ALJ is free to consider each medical opinion equally and may find an opinion more persuasive than others provided that substantial evidence supports such a finding. When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is . . . based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

### 2.     Analysis

Daniel Saal, M.D.is a psychiatrist who treated Plaintiff beginning in February 2019. AR 881. In April 2020 he completed a questionnaire based on his clinical observations and opinion regarding her condition and the severity of her symptoms, including a narrative explanation of what he believed would prevent her from sustaining work. AR 881-84. Dr. Saal noted Plaintiff remained in an "acute state of anxiety" with flashbacks and chronic nightmares of the mass shooting she witnessed, had depressed moods, and that her symptoms were "easily triggered by

United States District Court
Northern District of California

stress." AR 884.  He also opined that her condition had not improved despite her sobriety and the intensive outpatient treatment she had received.  *Id.*  Dr. Saal noted her prognosis was poor, with symptoms including appetite disturbance, decreased energy, blunt or flat affect, anxiety, persistent disturbance of mood or affect, vigilance and scanning, emotional withdrawal or isolation, and sleep disturbance.  AR 881-82.  His opinion was that she would have no ability to sustain functioning in a competitive workplace environment.  AR 882-83.

The ALJ found Dr. Saal's opinion had "limited persuasive value."  AR 23-24.  The ALJ noted that Plaintiff's "persistent complaints regarding symptoms of her mental impairments over the course of her treatment lend some support for her physician's determination that treatment resulted in 'no improvement,'" but he found the record contained "consistent findings that the claimant was pleasant and cooperative, with normal behavior, normal speech, logical thought process, goal-directed thought content, full orientation, normal attention, normal concentration, intact memory, normal fund of knowledge, fair to good impulse control, fair to good insight, and fair to good judgment."  AR 23.  The ALJ also found the objective findings by the consultative examiner did not support Dr. Saal's opinion.  AR 24.

Plaintiff argues the ALJ erred by failing to analyze whether Dr. Saal provided any support for his opinion.  Pl.'s Mot. at 8.  She notes Dr. Saal supported his opinion with reference to her specific PTSD symptoms, her treatment, and her prognosis; he explained why her PTSD symptoms would render her unable to perform in a workplace setting; and, as her treating psychiatrist, he had first-hand knowledge of her symptoms, treatment and prognosis.  *Id.* at 8-9 (citing AR 881-84).  Plaintiff also argues Dr. Saal's opinion was consistent with the findings of the mental status examinations throughout the record, all of which found her to have abnormal mood, primarily depressed or anxious, and a corresponding affect.  *Id.* at 9.

As noted above, the two most important factors the ALJ considers are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  Here, the ALJ considered and discussed both when assessing Dr. Saal's opinion.  The ALJ noted that Dr. Saal found Plaintiff had "no useful ability to function" with respect to any of the mental abilities and aptitudes needed to do unskilled work; had no ability to tolerate stress; could not complete a normal workday/workweek; had minimal

ability to reach out for help; trusted no one; and obsessed over decisions.  AR 23, 882-83.

However, the ALJ found that objective findings by the consultative examiner did not support the

severity of these functional impairments.  AR 24.  The ALJ also noted the consistent findings that

Plaintiff was pleasant and cooperative, with normal behavior, normal speech, logical thought

process, goal-directed thought content, full orientation, normal attention, normal concentration,

intact memory, normal fund of knowledge, fair to good impulse control, fair to good insight, and

fair to good judgment.  AR 20-24; *see also* records cited by the ALJ (citations in bold are findings

by Dr. Saal) 320, **326, 332-33, 344-45, 351, 378-79**, 401, 417-418, 420, **778**, 897-898, 915-916,

**923-24**, 935-936, **949**, 976, **1013**, **1082-83, 1119**, 1126-27, **1171**, 1187, **1197, 1211, 1234**, 1240).

As such, the Court finds the ALJ properly considered Dr. Saal's opinion and, based on substantial

evidence in the record, found it less persuasive than others.

Plaintiff also argues the ALJ failed to properly address Dr. Chandler's opinion,

maintaining that "[a]lthough the ALJ also briefly references Dr. Chandler's "objective findings" as

not supporting Dr. Saal's opinions (apparently confusing the different roles of "support" and

"consistency"), he failed to elucidate what he meant with this statement.  Pl.'s Mot. at 10.  The

Court disagrees.  The ALJ found some persuasive value in Dr. Chandler's January 2020

psychiatric consultative examination opinion.  AR 23, 759-63.  The ALJ noted that Dr. Chandler

found Plaintiff to be genuine; cooperative; appropriately dressed; displayed adequate grooming

and hygiene; appeared fatigued, but was oriented; speech was clear; thought process was linear;

thought content was logical; affect was mildly restricted; mood was mildly dysphoric; reported no

suicidal ideation; exhibited moderately decreased attention and concentration; memory was intact;

worked with a normal slowed pace; and she demonstrated adequate persistence.  AR 23, 760-61.

Dr. Chandler noted that prescribed psychotropic medications were helpful in reducing Plaintiff's

symptoms and found her psychiatric symptoms appeared to be mostly controlled by medication.

AR 760, 762.  Dr. Chandler opined that Plaintiff was capable of understanding, remembering, and

carrying out simple, detailed, and complex job instructions, and maintaining persistence and pace,

but she would have mild to moderate difficulty adapting to change in working setting and

moderate difficulty maintaining attention and concentration.  AR 23, 762.  The ALJ also noted

United States District Court
Northern District of California

13

1     that Dr. Chandler found Plaintiff would have mild difficulty functioning under normal stress, mild

2     to moderate difficulty dealing with supervisors and coworkers, and moderate difficulty dealing

3     with the public.  AR 23, 762.  The ALJ determined that Dr. Chandler's opinion was consistent

4     with the mental status findings of Plaintiff's treating sources that regularly observed her to be

5     pleasant and cooperative, with normal behavior, normal speech, logical thought process, goal-

6     directed thought content, full orientation, normal attention, normal concentration, intact memory,

7     normal fund of knowledge, fair to good impulse control, fair to good insight, and fair to good

8     judgment.  AR 23.  Dr. Chandler's opinion was also supported by her own findings and consistent

9     with the mental status findings highlighted in the treatment record by the ALJ.  *Id.*  As such, the

10    Court finds the ALJ properly considered Dr. Chandler's opinion.

11            Plaintiff also argues the "did not explicitly address the support or consistency of the

12    medical consultants' opinions and did not ultimately find them persuasive."  Pl.'s Mot. at 10-11.

13    However, a review of the ALJ's opinion shows that he assessed the prior administrative medical

14    findings of Barbara Moura, Psy.D. and Dandip Sen, M.D., who both concluded from the review of

15    the psychological records that Plaintiff had severe medically determinable psychological

16    impairments.  AR 24, 58-62, 71-76.  However, Dr. Moura and Dr. Sen found Plaintiff had only

17    mild limitation in her ability to understand, remember or apply information, and moderate

18    limitations in her ability to interact with others; to concentrate, persist or maintain pace; and to

19    adapt or manage oneself.  AR 58, 72.  Specifically, they both found that Plaintiff did not have

20    understanding and memory limitations; Dr. Moura found Plaintiff capable of performing simple

21    routine tasks with minimal social interaction, and Dr. Sen found Plaintiff capable of at least simple

22    routine tasks and some low-level detailed work tasks with limited social contact.  AR 61-62, 75-

23    76.  While the ALJ found some evidentiary support for these determinations, he assessed a more

24    severe limitation in understanding and memory based upon (1) Plaintiff's complaints to her

25    treating sources and (2) consultative examiner Dr. Chandler finding some deficits during

26    examination even though treating sources regularly recorded Plaintiff had normal attention and

27    concentration, and intact memory.  AR 18, 24.  Thus, the ALJ found a moderate limitation was

28

United States District Court
Northern District of California

1    warranted with respect to understanding and memory.  *Id.* (both).[5]  Accordingly, the Court finds

2    the ALJ properly considered the medical consultants opinions in his decision.

3         Finally, the Court notes the ALJ's RFC finding is not a medical finding; it is an

4    administrative finding regarding a claimant's ability to perform basic work functions that is

5    expressly reserved to the ALJ.  20 C.F.R. § 404.1527(d)(2) (ALJ is responsible for determining

6    RFC); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the

7    responsibility of the ALJ, not the claimant's physician, to determine residual functional

8    capacity.").  The adjudicator bases the RFC finding on the record as a whole, not any particular

9    medical opinion.  20 C.F.R. § 404.1545(a)(1) (RFC is based on all the relevant evidence in the

10   case record).  The ALJ has the obligation to consider the evidence and determine how consistent

11   various opinions are with the evidence and decide the RFC accordingly.  To the extent the

12   evidence of record is conflicting, as it is here in parts, the ALJ properly resolved the conflicts in

13   evaluating the medical opinions assessing Plaintiff's impairments and limitations, and ultimately

14   assessing the Plaintiff's RFC.  *See Treichler v. Comm'r of Soc. Security Admin.*, 775 F.3d 1090,

15   1098 (9th Cir. 2014) (court "leaves it to the ALJ" to resolve conflicts and ambiguities in the

16   record); *Batson*, 359 F.3d at 1195 (holding that the ALJ resolves conflicts in the medical

17   opinions); *Morgan v. Comm'r Soc. Security Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding,

18   "ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity").  As

19   long as the ALJ's interpretation is reasonable, the fact that Plaintiff would have resolved the

20   conflict differently, or the evidence may have supported a different interpretation, does not

21   establish legal error.  *Ford*, 950 F.3d at 1154, 1159; *Batson*, 359 F.3d at 1197 (In making the RFC

22   determination, the ALJ considers those limitations for which there is record support that does not

23

24   _____

     [5] Although the ALJ did not specifically state he found Dr. Moura's and Dr. Sen's opinions

25   partially persuasive, his decision makes clear what he found persuasive, supported and consistent
     with the record.  Further, the RFC assessment is more restrictive than Dr. Moura and Dr. Sen

26   opined; thus any error in articulation would be harmless.  *See Molina*, 674 F.3d at 1121 (even
     where agency "explains its decision with 'less than ideal clarity,'" the court must uphold it "if the

27   agency's path may reasonably be discerned") (citation and internal quotations omitted); *Ludwig v.
     Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to

28   demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not
     merely his procedural rights") (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)).

United States District Court
Northern District of California

depend on properly rejected evidence and subjective complaints).  Here, the ALJ's reasoning complied with the regulations and met the substantial evidence standard of review.  *See* 20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2) (most important factors are supportability and consistency); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

In sum, the Court finds the ALJ properly synthesized the overall record evidence, consistent with the medical opinions, into a functional capacity that reflected the limitations stemming from Plaintiff's medical conditions.  While Plaintiff may disagree with how the ALJ evaluated the evidence, the ALJ is the trier of fact, and his findings are entitled to deference.  *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential, and '[t]he threshold for such evidentiary sufficiency is not high'") (quoting *Biestek*, 139 S.Ct. at 1154); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.").  As such, the Court must affirm the ALJ's findings as consistent with the current regulatory scheme and supported by substantial evidence.

## VI.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: February 1, 2023

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California